UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WAYMAN TURNER,<br>Plaintiff,<br><br>v.<br><br>A.T. WALL, et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C. A. No. 14-196-M |

## MEMORANDUM AND ORDER

Plaintiff Wayman Turner filed this lawsuit pro se under 18 U.S.C. § 1983, seeking relief against Defendant A.T. Wall, Director of the Rhode Island Department of Corrections ("RI DOC"), James Weeden, Assistant Director of the RI DOC,[1] and Joseph DiNitto, Associate Director of RI DOC, related to his classification status at the RI DOC and his subsequent transfer to the Florida Department of Corrections. This is Mr. Turner's second lawsuit in this Court regarding his treatment by RI DOC officials.[2] In the current lawsuit, Mr. Turner has filed original, amended, and supplemental Complaints.[3] (ECF Nos. 1, 19, 19-1). The Complaint essentially alleges that his undesirable classification in a high security, closely managed facility

---

[1] The original Complaint named David McCauley as a defendant, but Mr. Turner replaced Mr. McCauley with James Weeden in the Amended Complaint and Supplemental Complaint. (*Compare* ECF No. 1 at 1, *with* ECF No. 19 at 1 and ECF No. 19-1 at 2).
[2] All ECF number references are to the docket in the instant case, C.A. No. 14-196-M, unless otherwise noted.
[3] Since Mr. Turner is proceeding pro se, the Court will consider the Amended Complaint and Supplemental Complaint ("Complaint") as one. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997) (courts are "required to construe liberally a pro se complaint"). In his opposition to the motions to dismiss, Mr. Turner explains that his Amended Complaint "deals with events that occurred before the original complaint was filed," while the Supplemental Complaint "deals with events that have occurred since [he] filed [his] original complaint [that] have some relationship to the claims in the original complaint." (ECF No. 44 at 10).

both in Rhode Island and later in Florida after an unwanted transfer to Florida was in retaliation for filing lawsuits against RI DOC officials. *Id.*

Before the Court are six motions - the State Defendants' Motion to Dismiss Plaintiff's Amended and Supplemental Complaint (ECF No. 35) and Defendant James Weeden's Motion to Dismiss Plaintiff's Amended and Supplemental Complaint (ECF No. 40); Mr. Turner's Motion for an Order Compelling Discovery (ECF No. 48); Motion for Appointment of Counsel (ECF No. 50); Motion for Enforce and Further Relief (ECF No. 51); and Motion Under Catchall Rule (ECF No. 55).[4] Because Defendants' motions to dismiss, if decided in their favor, are dispositive of Mr. Turner's motions, the Court will turn its attention to those first.

## I. FACTS[5]

In the first lawsuit, filed in 2006, Mr. Turner alleged that, because of RI DOC negligence, he was assaulted by an inmate who was his known enemy with whom he should not have contact. (C.A. No. 06-505-M; ECF No. 69). After the incident and during the duration of the first suit, Mr. Turner was transferred from the RI DOC to a prison in Virginia. *Id.* at 4. That lawsuit settled in 2012 and, pursuant to the settlement agreement, Mr. Turner returned to Rhode Island. (C.A. No. 06-505-M; ECF Nos. 140, 150). As specified in the settlement agreement, Mr. Turner was to serve the remainder of his sentence in Rhode Island where he would be assigned to High Security until a classification decision could be made, but the RI DOC retained the right to exercise its discretion regarding his placement in accordance with safety and other

---

[4] Mr. Turner also filed a Motion for Summary Judgment, which the Defendants moved to stay as premature. (*See* ECF Nos. 70, 73). The Court granted Defendants' motion without prejudice by Text Order so that motion is not ripe for decision at this time.
[5] In discussing the relevant facts, the Court takes the allegations from the Complaint.

concerns. (ECF No. 35-2).[6] Despite assurances from Director Wall that his classification was to happen in a matter of weeks, Mr. Turner remained at High Security for several months. In November 2012, Mr. Weeden wrote to Mr. Turner, indicating that his classification review would take place in January 2013. (ECF No. 1-8 at 2). Mr. Weeden told Mr. Turner that his enemy issues prevent his classification to Maximum Security and his lengthy sentence affects his ability to move through the RI DOC system, but that the Classification Board would determine whether he could be placed in Medium. *Id.*

On a separate track, in February 2013, Mr. Turner was negotiating a deal with the Rhode Island Attorney General's office. (ECF No. 1-5 at 3-4). State prosecutors agreed to reach out to RI DOC administrators in support of such a transfer to another facility in New England in exchange for his testimony against a defendant in another case. (ECF No. 19-1 at 3). Mr. Turner alleges that he met with a classification counselor and signed transfer papers indicating three New England states as his choices. *Id.* at 3-4. After meeting with a RI DOC attorney, Mr. Turner alleges that he was told that he "might" be transferred from High Security to Maximum Security. *Id.* at 4. The next month, the State decided against calling Mr. Turner to testify, presumably extinguishing any negotiations between Mr. Turner, the State, and the RI DOC relative to his New England transfer. (ECF No. 1-5 at 5). Mr. Turner remained in High Security, but heard from the Classification Board on November 14, 2013 that it recommended that he be placed in Medium Security. (ECF No. 1-4 at 6). Director Wall has final approval,

---

[6] "In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it." *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15–16 (1st Cir. 2003)). In this case, although the settlement agreement was not attached to Mr. Turner's Complaint, it was referred to and fairly incorporated in the Complaint such that the Court will consider it in deciding the motion to dismiss. *Rodi*, 389 F.3d at 12.

however, and he rejected the Board's recommendation and indicated that, based on his institutional record before and after his stay in Virginia, Mr. Turner would remain in High Security. *Id.* at 7. Director Wall affirmed that decision in February 2014, continuing Mr. Turner's placement there with a 90-day review. *Id.* Mr. Turner, apparently frustrated with his continued detention in High Security, requested a transfer to a facility outside of Rhode Island in April 2014; he was transferred to the Florida Department of Corrections in June of that year. (ECF No. 19-1 at 5; ECF No. 28-2 at 1).

In August of 2014, Mr. Turner filed an Amended Complaint and a Supplemental Complaint, seeking relief under 42 U.S.C. § 1983. (ECF Nos. 19, 19-1). The Amended Complaint seeks injunctive relief and money damages from Director Wall, Mr. Weeden, and Mr. DiNitto in their individual and official capacities, due to Mr. Turner's classification in RI DOC's High Security facility. (ECF No. 19 at 1-3). Mr. Turner alleges that he was placed and retained at High Security in retaliation for filing and settling the 2006 lawsuit, in violation of his First and Fourteenth Amendment rights. *Id.* at 2. The Supplemental Complaint asserts that the same Defendants retaliated against Mr. Turner by transferring him to the Florida prison system where he is placed on a restricted close management ("CM") status in violation of the First, Eighth, and Fourteenth Amendments. (ECF No. 19-1 at 2-5). In the Supplemental Complaint, he seeks an injunction ordering the RI DOC to return him to Rhode Island or to another prison in New England. *Id.* at 2.

Defendants Director Wall and Mr. DiNitto seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF Nos. 35, 40). They make four arguments: (i) the Complaint is procedurally defective; (ii) Mr. Turner lacks standing to challenge his previous placement in High Security at the RI DOC; (iii) Mr. Turner does not have

4

a constitutional right to a particular classification status or prison placement; and (iv) Mr. Turner fails to state a claim for retaliation. *Id.* Mr. Weeden seeks dismissal under Rule 12(b)(6) based on the same four arguments above, but also argues that there are insufficient facts alleged to support a claim against him, specifically referencing the letter he sent Mr. Turner in November of 2012 regarding the Classification Board. (ECF No. 40-1 at 7).

In his objection to both motions to dismiss, Mr. Turner raises his pro se status and seeks the Court's leniency in construing the allegations in his Complaint. (ECF No. 44 at 7). He contends that he has stated several claims, including a viable retaliation claim under § 1983, a conspiracy claim for denial of access to the courts, and a claim for violation of his First Amendment rights. *Id.* at 8, 11, 12, 13. Mr. Turner contends that Defendants ignored several alternatives to his placement in High Security and in Florida, demonstrating their "goal and motive" to "retaliate against" him. *Id.* at 15.

## II. STANDARD OF REVIEW

When analyzing a motion to dismiss, this Court must "'accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff[ ].'" *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Garcia–Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). In cases with multiple defendants, the court "must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *Sanchez*, 590 F.3d at 48 (citing Fed. R. Civ. P. 12(b)(6)).

Although the Court must review pleadings of a *pro se* plaintiff liberally, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, Mr. Turner "need not demonstrate that [he] is likely to prevail, but [his] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Garcia–Catalán*, 734 F.3d at 102–03 (quoting *Iqbal*, 556 U.S. at 678). The "complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not include 'detailed factual allegations.'" *Rodriguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 283 (1st Cir. 2014) (quoting *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013)).

Plausibility is analyzed in two steps. *Garcia–Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Garcia–Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). However, the First Circuit has cautioned courts against applying "the plausibility standard 'too mechanically' and fail[ing] to read complaints 'as a whole.'" *Rodriguez-Vives*, 743 F.3d at 283 (quoting *Garcia–Catalán*, 734 F.3d at 101, 103). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Garcia–Catalán*, 734 F.3d at 103 (quoting *Iqbal*, 556 U.S. at 679).

## III. ANALYSIS

### A. Procedural Deficiency

Defendants first argue that Mr. Turner's Complaint fails and should be dismissed because it is procedurally defective under the Federal Rules of Civil Procedure Rules 8 and 10. Defendants argue that Mr. Turner's Complaint fails because it does not comply with either Rule 10(b)'s dictate that a Complaint must contain numbered paragraphs or Rule 8(a)'s requirement that the allegations must not be in the form of a narrative or legal argument, but rather short plain statements of his claims. Even in the light of a generous reading of Mr. Turner's pro se Complaint, Defendants argue that these procedural errors fail to put them on notice of Mr. Turner's claims, justifying dismissal.

Mr. Turner asks for leniency in reviewing his allegations under the rules and this Court will give it. Reading his Complaint in its entirety, the Court finds that Mr. Turner has pled sufficient facts to support his claims. *See Rodriguez-Vives*, 743 F.3d at 283. His Complaint identifies the basis for the Court's jurisdiction and sets forth the relief he seeks. While his pleading is not as precise as one would see from a licensed attorney, the Court finds that it sets forth enough factual assertions such that Defendants are on notice of the claims against them. Certainly, Defendants have been able thus far to respond thoroughly to Mr. Turner's Complaint in the instant motions to dismiss. Therefore, the Court declines to dismiss Mr. Turner's Complaint on procedural grounds and moves to the substance of his claims.

### B. Standing

Mr. Turner alleges that Defendants retained him at High Security in violation of his rights under the First and Fourteenth Amendments of the Constitution. Specifically, he alleges that he was promised that the Classification Board would determine his classification and the Board

7

recommended his placement at Medium, but that Director Wall rejected that recommendation in retaliation for his 2006 lawsuit against RI DOC officials. Defendants ask the Court to dismiss Mr. Turner's claim, arguing that Mr. Turner lacks standing to challenge his previous placement in Rhode Island. They also argue for dismissal on substantive grounds.

It is well known that an "actual case or controversy" must exist in order for this Court to have jurisdiction over a claim. *Overseas Military Sales Corp., Ltd. v. Giralt-Armada*, 503 F.3d 12, 16-17 (1st Cir. 2007). This must be the case "at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). Where "a plaintiff has initial standing to bring a particular claim, a federal court is duty bound to dismiss the claim as moot if subsequent events unfold in a manner that undermines any one of the three pillars on which constitutional standing rests: injury in fact, causation, and redressability." *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006).

Mr. Turner is no longer housed in High Security at the ACI. He was transferred, upon his request, out of RI DOC custody on June 17, 2014. While he may have been injured by Defendants' alleged misclassification decision, Mr. Turner cannot meet the redressability element. Because he is no longer housed in Rhode Island in High Security, this Court does not have jurisdiction to redress any alleged injuries. Any decision the Court made at this point, such as ordering RI DOC to re-review Mr. Turner's past classification status, would be merely advisory because he is in Florida now and that is impermissible. *Giralt-Armada*, 503 F.3d at 17.

To the extent that Mr. Turner argues that his misclassification in Rhode Island affected his stricter classification in Florida, that argument fails because Florida officials classified him when he arrived there and could decide to change his status with RI DOC's approval. *Price v. Wall*, 464 F. Supp. 2d 90, 98-99 (D.R.I. 2006) (transferee facility determines classification for

transferred inmates). Therefore, because he lacks standing to challenge his previous High Security classification, the claim that he was wrongly classified contained in his original Complaint (ECF No. 1) and as amended (ECF No. 19) is dismissed as to all Defendants. However, even if he did have standing, his claims rooted in his classification status fail on substantive grounds as well as discussed below.

### C. Constitutional Right to Classification and Placement

The Court now turns to Mr. Turner's constitutional claims relating to his classification and transfer and Defendants' motion thereon. "Section 1983 'creates a remedy for violations of federal rights committed by persons acting under color of state law.'" *Sanchez*, 590 F.3d at 40-41 (quoting *Haywood v. Drown*, 556 U.S. 729, 731 (2009)). It "requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action." *Sanchez*, 590 F.3d at 41 (citing 42 U.S.C. § 1983). However, the Rhode Island Supreme Court has held that there is no constitutional right to a certain inmate classification because by statute, "the director of the Department of Corrections is given total and exclusive *final* discretion in the classification and housing of persons committed to his custody." *Bishop v. State*, 667 A.2d 275, 277 (R.I. 1995); *McManus v. Wall*, 29 F. App'x 618, 619 (1st Cir. 2002) ("Rhode Island has not created a protected liberty interest in its prison classification system."). There is also no constitutional right relating to inter or intrastate prison transfers. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Defendants move to dismiss Mr. Turner's claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (ECF Nos. 19, 19-1). Mr. Turner recognizes that there is no liberty interest in his classification in general, and admits he requested the transfer out of Rhode Island, but to a New England state. He contends, however, that classification and transfer

decisions are unconstitutional if they are done in retaliation for exercising his First Amendment right to file lawsuits against RI DOC officials. Therefore, while Mr. Turner does not have an independent constitutional claim based on his classification status and transfer to another state's facility, the Court will examine his claim for retaliation in light of prevailing law.

### D. Retaliation

Retaliation for filing a lawsuit is itself a violation of the constitution actionable under 42 U.S.C. § 1983. *Price*, 464 F. Supp. 2d at 96 (citing *White v. Napoleon*, 897 F.2d 103, 111-112 (3rd Cir. 1990)). Therefore, in order to state a claim for retaliation, Mr. Turner must allege that 1) his conduct was constitutionally protected, 2) he suffered an adverse action, and 3) there was a causal connection between the conduct and the adverse action such that the conduct was a motivating factor for the adverse action. *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 468 (S.D.N.Y. 1998). "Only retaliatory conduct that would deter a similarly situated individual from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Price*, 464 F. Supp. 2d at 96.

#### 1. Constitutionally Protected Conduct

With regard to both the classification and transfer scenarios, Mr. Turner meets the first hurdle. The right to petition the government through a lawsuit is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967). His conduct in petitioning the government through litigation was constitutionally protected. It is in the last two elements where his claims fall short.

#### 2. Adverse Action

Moving to the second element, Mr. Turner alleges that his classification at High Security was adverse because it imposed an "atypical and significant hardship in relation to ordinary

prison life." (ECF No. 19 at 2). He cites an indefinite twenty-three hour lockdown, a lack of human contact with family, and only one twenty-minute phone call per week. *Id.* at 3. This Court has previously found that "actions comparable to a transfer to segregation" can be considered adverse. *Price*, 464 F. Supp. 2d at 97. Therefore, Mr. Turner has met the second element as he suffered adverse action by being held at High Security despite the Classification Board's recommendation that he be moved to Medium.

His transfer to Florida, however, requires more scrutiny as to whether it was an adverse action. This Court has also recognized that "an involuntary transfer to an out of state prison" can be considered adverse, *see id.*, but Mr. Turner requested the transfer. (ECF No. 19-1 at 5). Because the transfer was voluntary and at his request, it cannot be considered adverse. He acknowledges that he requested the transfer from RI DOC, but alleges that he believed Defendants agreed to ensure he stayed in New England. But, his allegations surrounding the request to be transferred to a New England prison are inconsistent. He argues that he only agreed to the transfer because there was an agreement that he would stay in New England, but his Complaint alleges that the New England transfer hinged on the recommendation by the Attorney General's Office to RI DOC officials in exchange for his cooperation in another criminal case. *Id.* at 3. He never testified and alleged that he did not cooperate, ostensibly mooting any offer by the Rhode Island Attorney General's Office to recommend the transfer to a New England prison. *Id.* at 5. Therefore, because he did not testify, he should have realized that the transfer recommendation to a New England facility would not transpire.

Again, looking at what Mr. Turner has to prove in order to state a claim for unconstitutionally retaliatory conduct, his claim fails because he agreed to be transferred out of Rhode Island and admitted in his Complaint that he was not entitled to the Attorney General's

recommendation of a final destination because he did not ultimately cooperate in the other criminal case, i.e. the *quid pro quo* for the recommendation. *Id.* at 3; *see also Price*, 464 F. Supp. 2d at 97. Therefore, Defendants' motion to dismiss Mr. Turner's retaliation claim based on his transfer to Florida is GRANTED.[7]

### 3. Causal Connection

All that remains is whether Mr. Turner has alleged a causal connection between the lawsuits against RI DOC officials and Defendants' decision to reject the Classification Board's recommendation that he be placed at Medium such that the lawsuits were the motivating factor for the decision to keep him at High Security. He has not. Mr. Turner fails to allege any facts - beyond speculation - to connect Director Wall's decision to retain him at High Security to the 2006 lawsuit or to the present lawsuit. On the contrary, Director Wall indicated in his communication to Mr. Turner on February 11, 2014 that his classification would remain at High Security because of his institutional record, sentence length, parole eligibility date, and instrument custody level score. (ECF No. 1-4 at 8). In fact, the 2006 lawsuit had been resolved and the instant lawsuit had not been filed in February 2014 so could not have influenced Defendants' decision to keep Mr. Turner at High Security.

It is not only just the basic causal connection that is lacking, but also Mr. Turner has not alleged or presented any facts to show that Defendants' classification decision would deter other similarly situated inmates from filing a lawsuit. Because "[c]laims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every

---

[7] Mr. Turner further alleges that the transfer violated his due process rights because he is not paid for working in Florida, as he would be in a New England prison, his presence in Florida affects his parole chances and harms his relationship with his family. Again, the fact that Mr. Turner requested to be transferred out of RI DOC forecloses this claim. That he did not know he would be sent to a less favorable facility does nothing to help his cause.

disciplinary act that occurs in penal institutions," *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), the Court rejects Mr. Turner's claim that Defendants made an adverse classification decision in retaliation for petitioning the government through litigation. Therefore, Mr. Turner's retaliation claim relating to classification fails.

## IV. CONCLUSION

Defendants' motions to dismiss (ECF Nos. 35, 40) are GRANTED. This ruling is dispositive of Mr. Turner's additional motions; therefore, Mr. Turner's Motion for An Order Compelling Discovery (ECF No. 48), Motion for Appointment of Counsel (ECF No. 50), Motion to Enforce and Further Relief (ECF No. 51), and Motion Under the Catch-All Rule (ECF No. 55) are DENIED. Mr. Turner's Complaint is dismissed as to all Defendants.

IT IS SO ORDERED,

_____
John J. McConnell, Jr.
United States District Judge

Date: March 24, 2015